**No. 26-1172**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ASTRAZENECA PHARMACEUTICALS LP,

Plaintiff-Appellant,

v.

ANNE E. LOPEZ, *in her official capacity as Attorney General of Hawaii*,

Defendant-Appellee.

On Appeal from the United States District Court
for the District of Hawaii

## BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
## IN SUPPORT OF APPELLANT AND REVERSAL

*Of Counsel:*

ELIZABETH C. KELLEY
*Deputy General Counsel*
*U.S. Department of Health and*
*Human Services*

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant*
*Attorney General*

MICHAEL S. RAAB
MAXWELL A. BALDI
*Attorneys, Appellate Staff*
*Civil Division, Room 7513*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 532-0211*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION AND INTEREST OF AMICUS CURIAE................................1

STATEMENT OF THE CASE ..............................................................................2

      A.     The 340B Program ....................................................................2

      B.     Hawaii's Act 143..........................................................................8

      C.     Prior Proceedings ......................................................................9

ARGUMENT ......................................................................................................10

I.     The Supremacy Clause prohibits Hawaii from enforcing the Act. .....................10

      A.     Hawaii's law is preempted by Section 340B and violates the intergovernmental immunity doctrine. ....................................10

      B.     State laws like the Act risk disincentivizing Medicare and Medicaid participation................................................................17

II.    The district court erred in denying a preliminary injunction. ...........................20

CONCLUSION...................................................................................................27

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                **Page**

*AbbVie, Inc. v. Fitch,*
152 F.4th 635 (5th Cir. 2025) (per curiam) ................................. 25

*AbbVie, Inc. v. Murrill,*
166 F.4th 2026 (5th Cir. 2026) ................................. 25

*Astra USA, Inc. v. Santa Clara County,*
563 U.S. 110 (2011) ................................. 2, 3, 5, 16

*Boehringer Ingelheim Pharms., Inc. v. HHS,*
150 F.4th 76 (2d Cir. 2025) ................................. 17, 18

*Boeing Co. v. Movassaghi,*
768 F.3d 832 (9th Cir. 2014) ................................. 13, 22

*Chinatown Neighborhood Ass'n v. Harris,*
794 F.3d 1136 (9th Cir. 2015) ................................. 22

*Dawson v. Steager,*
586 U.S. 171 (2019) ................................. 14, 15, 19

*Goodyear Atomic Corp. v. Miller,*
486 U.S. 174 (1988) ................................. 23

*McCulloch v. Maryland,*
17 U.S. (4 Wheat.) 316 (1819) ................................. 11, 19, 22

*North Dakota v. United States,*
495 U.S. 423 (1990) ................................. 14, 20, 21

*Novartis Pharms. Corp. v. Johnson,*
102 F.4th 452 (D.C. Cir. 2024) ................................. 7, 11, 17

*Pharmaceutical Rsch. & Mfrs. of Am. v. McCuskey*,
No. 25-1054, 2026 WL 898259 (4th Cir. Mar. 31, 2026) ......................11, 12, 13, 15, 16, 17, 18, 22

*Pharmaceutical Rsch. & Mfrs. of Am. v. McClain*,
95 F.4th 1136 (8th Cir. 2024) ...............................................................23, 24

*Pharmaceutical Rsch. & Mfrs. of Am. v. Walsh*,
538 U.S. 644 (2003) ..................................................................... 12

*Phillips Chem. Co. v. Dumas Indep. Sch. Dist.*,
361 U.S. 376 (1960) ................................................................. 10–11

*Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*,
547 U.S. 47 (2006) ........................................................................ 24

*Sanofi Aventis U.S. LLC v. HHS*,
58 F.4th 696 (3d Cir. 2023) ........................................................... 7, 11

*United States v. Washington*,
596 U.S. 832 (2022) ................................................... 10, 11, 13, 20, 22–23

*Transcontinental Gas Pipe Line Corp. v. State Oil & Gas Bd.*,
474 U.S. 409 (1986) ...................................................................... 22

*United States v. California*,
921 F.3d 865 (9th Cir. 2019) ...................................................... 14, 19, 21

*United States v. City of Arcata*,
629 F.3d 986 (9th Cir. 2010) ........................................................... 21

*United States v. King County*,
122 F.4th 740 (9th Cir. 2024) ...................................................... 13, 21

*Whistler Invs., Inc. v. Depository Tr. & Clearing Corp.*,
539 F.3d 1159 (9th Cir. 2008) ......................................................... 11

*Wisconsin Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*,
475 U.S. 282 (1986) ...................................................................... 19

**Statutes**

Patient Protection and Affordable Care Act,
   Pub. L. No. 111-148, tit. VII, subtitle B, 124 Stat. 119 (2010) ............................... 3, 16

Veterans Health Care Act of 1992,
   Pub. L. No. 102-585, tit. VI, § 602, 106 Stat. 4943, 4967–71
   (codified at 42 U.S.C. § 256b) ........................................................................ 2
   42 U.S.C. § 256b ........................................................................... 1, 2, 11
   42 U.S.C. § 256b(a)(1) .................................................................. 1, 3, 4, 11
   42 U.S.C. § 256b(a)(1)–(2) .............................................................. 4
   42 U.S.C. § 256b(a)(4) .................................................................. 3
   42 U.S.C. § 256b(a)(5) .................................................................. 4
   42 U.S.C. § 256b(a)(5)(A) ............................................................... 4
   42 U.S.C. § 256b(a)(5)(B) ............................................................... 4
   42 U.S.C. § 256b(a)(5)(C) ............................................................... 4
   42 U.S.C. § 256b(d)(1)(B)(i) ............................................................ 6
   42 U.S.C. §§ 256b(d)(1)(B)(vi) ......................................................... 5
   42 U.S.C. § 256b(d)(2)(B)(v) ........................................................... 4
   42 U.S.C. § 256b(d)(3) .................................................................. 5

10 U.S.C. § 983(b) ................................................................................. 24

28 U.S.C. § 517 ..................................................................................... 1

42 U.S.C. § 1396r-8 ............................................................................ 2, 19

42 U.S.C. § 1396r-8(a)(1) ....................................................................... 18

42 U.S.C. § 1396r-8(c) ........................................................................... 2

42 U.S.C. § 11396r-8(b)(4)(B)(i), (v) ........................................................... 5

42 U.S.C. §§ 1320f–1320f-7 ................................................................... 19

Ark. Code Ann. § 23-92-604(c) ................................................................ 23

Haw. Rev. Stat. § 481n-1 ......................................................................... 8

Haw. Rev. Stat. § 481n-1–6 ................................................................ 8

Haw. Rev. Stat. § 481n-2(a) ........................................................ 8, 9, 12

Haw. Rev. Stat. § 481n-4(b)–(c) ........................................................ 9

Haw. Rev. Stat. § 481n-3 ................................................................ 17

Haw. Rev. Stat. § 481n-4 ................................................................ 17

La. Stat. Ann. § 40:2884 ................................................................ 25

W. Va. Code § 60A-8-6a(b)(1) ........................................................ 15

**Regulations:**

42 C.F.R. pt. 447 ................................................................ 2

42 C.F.R. § 10.10 ................................................................ 4

42 C.F.R. § 10.21(a)(1) ................................................................ 5, 17

42 C.F.R. §§ 10.20–10.24 ................................................................ 5

**Rule:**

Federal Rule of Appellate Procedure 29(a) ................................................ 1

**Legislative Materials:**

H.R. Rep. No. 102-384, pt. 2 (1992) ................................................ 2

Haw. Laws 2025, ch. 143 ................................................................ 8

Haw. Laws 2025, ch. 143, § 1 ........................................................ 17

Haw. Laws 2025, ch. 143, § 3 ........................................................ 9

Miss. H.B. 728 § 4(1)–(2) (2024) ................................................ ??

**Other Authorities:**

61 Fed. Reg. 43,549 (Aug. 23, 1996) ................................................. 6

72 Fed. Reg. 1540 (Jan. 12, 2007) .................................................... 6

75 Fed. Reg. 10,272 (Mar. 5, 2010) .................................................. 6

Bausch Health Cos., Quarterly Report (Form 10-Q) (Oct. 30, 2025) ..........................18

Health Res. & Servs. Admin.,
   2024 340B Covered Entity Purchases (Dec. 2025),
   https://perma.cc/9EUU-B446 ...................................................5

N.Y. State Dep't of Health,
   *Medicaid NYRx, Discontinued Drug Coverage for Terminated Labelers Per*
   *Medicaid National Drug Rebate Agreement* (Sept. 16, 2025),
   https://perma.cc/C6DY-7A3U ...................................................18

National Ass'n of Cmty. Health Ctrs.,
   *A Year in Review: State Legislative Trends in 340B in 2025* (Oct. 17, 2025),
   https://perma.cc/8V7G-HMLX ...................................................19

## INTRODUCTION AND INTEREST OF AMICUS CURIAE

Pursuant to 28 U.S.C. § 517 and Federal Rule of Appellate Procedure 29(a), the United States files this brief as amicus curiae in support of appellants. The federal government has a strong interest in the smooth functioning of the drug-discount program established by Section 340B of the Public Health Service Act, 42 U.S.C. § 256b. But the Hawaii law at issue here interferes with and obstructs it.

Section 340B requires pharmaceutical manufacturers participating in Medicare Part B and Medicaid to sign agreements with the Secretary of Health and Human Services (HHS), under which they agree to offer to sell drugs at reduced prices to certain healthcare providers known as "covered entities." 42 U.S.C. § 256b(a)(1). In regulating manufacturers' participation in the 340B program, Hawaii seeks to supplement the regulatory scheme Congress created.

States may not discriminate against those who participate in a federal scheme; such laws inhibit the federal government's interest in promoting participation in its programs. Nor may States interfere with the scheme that Congress created to enforce Section 340B's requirements. Yet Hawaii's law requires manufacturers who participate in the 340B Program—and only those manufacturers—to bear additional burdens imposed not by Congress but by Hawaii. And the State's law supplants the

enforcement mechanism that Congress authorized. For those reasons, the Supremacy Clause forbids its enforcement. The judgment below should therefore be reversed.

## STATEMENT OF THE CASE

### A. The 340B Program

1. Since 1990, pharmaceutical manufacturers that participate in Medicaid have been required to "provide rebates to States on their Medicaid drug purchases." *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 114 (2011); *see* 42 U.S.C. § 1396r-8. These rebates provide States with a discount, which for most "brand-name drugs" is equivalent to the difference between the average wholesale price and the lowest price at which the manufacturer sells the drug, known as the "best price." *See* 42 U.S.C. § 1396r-8(c); 42 C.F.R. pt. 447.

The creation of this program gave rise to a concern that manufacturers had reduced the discounts they were giving to safety-net providers in order to raise the "best price" figures for their drugs under Medicaid and lower their rebate payments to States. *See* H.R. Rep. No. 102-384, pt. 2, at 10–12 (1992). Congress responded by creating the 340B Program to govern the prices that drug manufacturers may charge providers that offer health care to underserved individuals, Veterans Health Care Act of 1992, Pub. L. No. 102-585, tit. VI, § 602, 106 Stat. 4943, 4967–71 (codified at 42 U.S.C. § 256b), and

it later expanded the scope of that program, Patient Protection and Affordable Care Act, Pub. L. No. 111-148, tit. VII, subtitle B, 124 Stat. 119, 821–28 (2010). Unlike Medicaid, the 340B Program is not a cooperative State-federal program.

Under Section 340B, pharmaceutical manufacturers participating in Medicaid and in Medicare Part B (which covers physician-administered drugs) "must offer discounted drugs to covered entities, dominantly, local facilities that provide medical care for the poor." *Astra USA,* 563 U.S. at 115; *see* 42 U.S.C. § 256b(a)(1), (3), (4). Covered entities include, for example, federally qualified health centers, certain children's hospitals and free-standing cancer hospitals, critical access hospitals, rural referral centers, black lung clinics, and other federally funded health care entities. 42 U.S.C. § 256b(a)(4).

Section 340B implements these discounted-pricing requirements through "uniform agreements that recite the responsibilities [Section] 340B imposes, respectively, on drug manufacturers and the Secretary of HHS." *Astra USA*, 563 U.S. at 113. These "are not transactional, bargained-for contracts" but rather "simply incorporate statutory obligations and record the manufacturers' agreement to abide by them." *Id.* at 113, 118. Section 340B directs HHS to enter into pricing agreements providing that "the amount required to be paid (taking into account any rebate or

3

discount, as provided by the Secretary) to the manufacturer for covered outpatient drugs ... purchased by a covered entity" may not exceed a specified ceiling price. 42 U.S.C. § 256b(a)(1). For covered outpatient drugs, the ceiling price is equivalent to the average manufacturer price less the rebate the manufacturer provides to States. *Id.* § 256b(a)(1)–(2); 42 C.F.R. § 10.10.

Section 340B also imposes a pair of substantive requirements on covered entities, prohibiting (1) duplicate discounts and (2) the diversion of drugs purchased under the 340B Program. 42 U.S.C. § 256b(a)(5). To prevent duplicate discounts, the statute specifies that a covered entity shall not request a discount for a drug that is already subject to a separate Medicaid rebate requirement. *Id.* § 256b(a)(5)(A). And to prevent diversion, the statute specifies that "a covered entity shall not resell or otherwise transfer the drug to a person who is not a patient of the entity." *Id.* § 256b(a)(5)(B).

To promote transparency, Section 340B requires a covered entity to permit both HHS and the manufacturer to audit the entity's records. 42 U.S.C. § 256b(a)(5)(C). Congress authorized HHS to impose sanctions against covered entities—including monetary penalties, removal from the 340B Program, and referral to other federal agencies for appropriate action—for diversion, duplicate discounts, or other violations of Program requirements. *Id.* § 256b(d)(2)(B)(v). Congress amended Section 340B to

expressly require HHS to create an administrative dispute resolution process under which disputes between manufacturers and covered entities may be resolved through a 340B administrative process. *See id.* § 256b(d)(3); 42 C.F.R. §§ 10.20–10.24. For example, a covered entity may ask HHS to adjudicate claims "that it has been overcharged by a manufacturer for a covered outpatient drug, *including claims that a manufacturer has limited the covered entity's ability to purchase covered outpatient drugs at or below the 340B ceiling price*." 42 C.F.R. § 10.21(a)(1) (emphasis added).

If a manufacturer fails to comply with its 340B requirements, HHS may impose civil penalties and may also terminate "the manufacturer's eligibility for Medicaid coverage of its drugs." *Astra USA*, 563 U.S. at 115–16; *see* 42 U.S.C. §§ 256b(d)(1)(B)(vi), 1396r-8(b)(4)(B)(i), (v).

2. The 340B Program accounts for a significant portion of prescription drug spending in the United States. In 2024, "covered entities purchased $81.4 billion in covered outpatient drugs under the 340B Program." Health Res. & Servs. Admin., 2024 340B Covered Entity Purchases (Dec. 2025), https://perma.cc/9EUU-B446. That sum represents approximately 16.5% of total prescription drug spending nationwide and it represents an even larger proportion of outpatient drug sales. *See id.*

Many covered entities rely on outside pharmacies, known as "contract pharmacies," to dispense to their patients the drugs purchased at the discounted prices. Congress gave HHS specific rulemaking authority with respect to only limited aspects of the 340B Program that do not include these contract-pharmacy arrangements. *See* 42 U.S.C. § 256b(d)(1)(B)(i), (1)(B)(vi), (3). However, HHS periodically issued nonbinding guidelines on that topic. *See, e.g.*, 61 Fed. Reg. 43,549, 43,550 (Aug. 23, 1996) (explaining that "these guidelines create no new law and create no new rights or duties").

In an initial set of guidelines, HHS advised that a covered entity should contract with only one pharmacy to provide all pharmacy services for any particular site of the covered entity. 61 Fed. Reg. at 43,555. Starting in 2001, however, HHS began a pilot program under which covered entities used multiple contract pharmacies to increase their patients' access to 340B drugs. 72 Fed. Reg. 1540, 1540 (Jan. 12, 2007). After studying the results from that pilot program, in 2010, HHS issued guidelines indicating that covered entities could use multiple contract pharmacies as long as the covered entities complied with guidelines to prevent duplicate discounts and diversion through adhering to policies regarding the definition of a "patient" of a covered entity. 75 Fed. Reg. 10,272, 10,273 (Mar. 5, 2010). After HHS issued this guidance, the use of contract

pharmacies "increased twentyfold." *Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 700

(3d Cir. 2023). "According to drug manufacturers, these partnerships have left the

section 340B program vulnerable to abuse—at great cost to the manufacturers."

*Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 455 (D.C. Cir. 2024).

Beginning in 2020, a number of the country's largest drug manufacturers

announced that they would cease shipping discounted drugs to contract pharmacies

used by covered entities, unless various conditions were met. *See Sanofi Aventis*,

58 F.4th at 700–01. In response, HHS asserted that "drug makers must deliver

discounted drugs to an unlimited number of contract pharmacies" to comply with their

340B obligations. *See id.* at 701. Many manufacturers sued, and two courts of appeals

rejected HHS's reading of Section 340B. *See id.* at 703–06; *Novartis*, 102 F.4th at 464.

The D.C. Circuit held that manufacturers may impose some reasonable conditions on

their offers to sell drugs to covered entities, including limits on the number of contract

pharmacies each covered entity may use. *Novartis*, 102 F.4th at 464. And the Third

Circuit held that nothing in the text of Section 340B prevented manufacturers from

creating such limits. *Sanofi Aventis*, 58 F.4th at 706.[1]

---

[1] A parallel case is still pending in the Seventh Circuit. *Eli Lilly v. Kennedy*, No. 21-3128 (7th Cir. argued Oct. 31, 2022).

Following that litigation, many States, including Hawaii, stepped in and attempted to regulate in HHS's stead.

### B. Hawaii's Act 143

In May 2025, the Hawaii Legislature enacted Act 143, Haw. Laws 2025, ch. 143 (codified at Haw. Rev. Stat. § 481n-1–6) (Act). The Act specifically regulates and is limited to participants in the 340B Program. *See* Haw. Rev. Stat. § 481n-2(a).

As relevant here, it prohibits 340B-participating pharmaceutical manufacturers (and other related entities) from:

> deny[ing], restrict[ing], prohibit[ing], either directly or indirectly, the acquisition of a 340B drug by, or shipping or delivery of a 340B drug to, a pharmacy that is under contract with a 340B covered entity and is authorized under the contract to receive and dispense 340B drugs on behalf of the 340B covered entity unless the receipt is prohibited by the United States Department of Health and Human Services.[2]

---

[2] Under the Act, "'340B drug' means a prescription drug that is purchased by a 340B covered entity through the federal 340B drug pricing program authorized by title 42 United States Code section 256b (section 340B of the Public Health Service Act) and is dispensed by a pharmacy." Haw. Rev. Stat. § 481n-1. "'340B covered entity' means an entity that participates in the federal 340B drug pricing program authorized by title 42 United States Code section 256b (section 340B of the Public Health Service Act)." *Id.*

Haw. Rev. Stat. § 481n-2(a). A manufacturer that violates these provisions is subject to civil fines of up to $2,500 per violation as well as disgorgement and other equitable relief. *id.* § 481n-4(b)–(c).

The Act took effect on July 1, 2025. Haw. Laws 2025, ch. 143, § 3.

### C.   Prior Proceedings

Plaintiff, a pharmaceutical manufacturer, sued to challenge the Act, 2-ER-183–234, and sought a preliminary injunction, *see* 2-ER-253. The district court denied that motion. 1-ER-2–49.

The district court concluded that the Act can coexist with Section 340B. *See* 1-ER-28–44. The district court accepted that the presumption against preemption applies to the Act, reasoning that Hawaii engaged in traditional "public-health" regulation of "the manner in which drug manufacturers must arrange to provide drugs to hospitals and other covered entities." 1-ER-49.  The district accepted at the preliminary-injunction stage that Section 340B is silent about conditions of drug delivery,[3] and concluded that Congress's silence weighs against preemption. 1-ER-31–

---

[3] The district court, however, suggested its openness to the view, not advanced by any party, that "any restriction of covered entities' ability to use contract pharmacies in Hawaiʻi could conceivably be found unlawful ... under Section 340B itself." 1-ER-31–32.

36. The district court also rejected the notion that the Act "targets some uniquely federal interest embedded within" Section 340B and the argument that the Act "present[s] a substantial risk of conflicting adjudications." 1-ER-38. And the district court rejected plaintiff's argument that the Act impermissibly violates the intergovernmental immunity doctrine by targeting for regulation "manufacturers who enter into contracts with the government to participate in Medicare and Medicaid." 1-ER-40; *see* 1-ER40–44. The district court did, however, accept plaintiff's "persuasive argument that [the Act] is not generally applicable." 1-ER-44.

The district court also rejected plaintiff's argument that federal patent law preempts the Act. *See* 1-ER-44–49.

## ARGUMENT

I.      **The Supremacy Clause prohibits Hawaii from enforcing the Act.**

A.      **Hawaii's law is preempted by Section 340B and violates the intergovernmental immunity doctrine.**

1. The Supremacy Clause "prohibit[s] States from interfering with or controlling the operations of the Federal Government." *United States v. Washington*, 596 U.S. 832, 838 (2022). Thus, States may not "regulate the United States directly or discriminate against the Federal Government or those with whom it deals." *Id.* (cleaned up); *see also Phillips Chem. Co. v. Dumas Indep. Sch. Dist.*, 361 U.S. 376, 387 (1960) (State may not

10

discriminate against lessee of federal property). Similarly, the Supremacy Clause permits Congress to preempt state law impliedly, by crowding out related state laws. *See Whistler Invs., Inc. v. Depository Tr. & Clearing Corp.*, 539 F.3d 1159, 1164 (9th Cir. 2008). In cases such as these, the principles of intergovernmental immunity and preemption often overlap, but, under either framework, a State cannot intercede in the execution of the laws Congress enacts. *See Washington*, 596 U.S. at 838 (citing *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819)).

Congress has delineated the terms of the 340B Program. *See* 42 U.S.C. § 256b; *see also Pharmaceutical Rsch. & Mfrs. of Am. v. McCuskey*, No. 25-1054, 2026 WL 898259 at *9–11 (4th Cir. Mar. 31, 2026). As provided by Congress, manufacturers must sign agreements with HHS memorializing their obligation to charge covered entities no more than a statutory ceiling price for 340B drugs sales; the agreements also require manufacturers to actually offer the drugs for sale to covered entities. *Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 699–700 (3d Cir. 2023) (citing 42 U.S.C. § 256b(a)(1)). Two courts of appeals have rejected HHS's argument that the statute read as a whole prohibits manufacturers from setting conditions on how pharmaceutical manufacturers deliver drugs to covered entities. *See id.* at 704–06; *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 464 (D.C. Cir. 2024); *see also*

11

*McCuskey*, 2026 WL 898259 at \*9 (embracing that conclusion). Hawaii attempts to achieve a contrary result through state law, but Congress left no role for States in determining manufacturers' 340B obligations.[4]

Hawaii's enactment violates principles of intergovernmental immunity because it impermissibly targets and discriminates against manufacturers that participate in a federal program. The Act applies specifically and exclusively to such manufacturers: The Act is triggered by participation in the 340B Program. *See* Haw. Rev. Stat. § 481n-2(a). A manufacturer doing business in Hawaii subjects itself to the Act only so long as it participates in the 340B Program; if it opts out of the 340B Program, it frees itself from the constraints of the Act. The scope of the Act, therefore, directly discriminates against manufacturers who have 340B agreements with the federal government. Nor, as the district court acknowledged, *see* 1-ER-44, does Hawaii impose similar obligations on similarly situated pharmaceutical manufacturers who do not participate in the 340B Program. As the Fourth Circuit recently recognized in sustaining a preliminary

---

[4] The 340B Program is thus unlike other federal health programs like Medicaid, which "give[] the States substantial discretion" in determining how to operate a cooperative endeavor with the federal government. *Pharmaceutical Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 665 (2003) (plurality opinion) (quotation marks omitted). "Section 340B did not merely set a floor to which States may add additional obligations." *McCuskey*, 2026 WL 898259 at \*9.

12

injunction against enforcement of a similar state law, these laws "single[ ] out 340B manufacturers" "for unfavorable treatment." *McCuskey*, 2026 WL 898259 at *9–10. The Supremacy Clause, however, forbids States from "singl[ing] … out for less favorable treatment," those who do business with the federal government and from "regulat[ing] them unfavorably on some basis related to their governmental status," *Washington*, 596 U.S. at 839 (quotation marks omitted). The manufacturers "cannot be subjected to discriminatory regulations because [they] contracted with the federal government." *Boeing Co. v. Movassaghi*, 768 F.3d 832, 842 (9th Cir. 2014).

The Act facially violates that constitutional stricture by imposing additional burdens on manufacturers who participate in the 340B Program. *See Washington*, 596 U.S. at 839 (deeming law discriminatory because "[o]n its face" it "explicitly treats federal workers differently than state or private workers"); *see also United States v. King County*, 122 F.4th 740, 757 (9th Cir. 2024). When a state law directly targets the federal government or those with whom it does business, the law is invalid. *See, e.g., Boeing Co.*, 768 F.3d at 842–43 (state law that "specifically targets" federal contract because of federal activity is invalid). A State could not levy a special tax only on landlords that accept federal housing subsidies, or require physicians to use costlier diagnostic tests only for Medicare patients, or impose heightened liability rules only on contractors who

13

do business with Immigration and Customs Enforcement. Hawaii's attempt to regulate and burden 340B participation is no different.

The Supreme Court's decision in *Dawson v. Steager*, which applied an intergovernmental tax immunity statute, confirms these basic principles. 586 U.S. 171, 173 (2019); *see id.* (explaining that the statute at issue "codifies" the "legal doctrine" of intergovernmental immunity set out in *McCulloch*); *see also United States v. California*, 921 F.3d 865, 883 (9th Cir. 2019) (citing *North Dakota v. United States*, 495 U.S. 423, 434–39 (1990) (plurality opinion)) ("[T]he principles of the intergovernmental tax immunity doctrine apply to the general intergovernmental immunity doctrine."). The Court invalidated a West Virginia law which provided identically situated state retirees with a tax benefits unavailable to federal employees, *Dawson*, 586 U.S. at 175, explaining that a State's laws must "treat[ ] those who deal with the federal government as well as it treats those with whom the State deals itself," *id.* at 177 (cleaned up). Because the West Virginia law had the effect of treating federal retirees worse, the Court concluded it was unlawful under the Supremacy Clause. *Id.* at 180. The same logic applies to the Act, which treats manufacturers with 340B agreements worse than manufacturers who do not participate in the 340B Program; the same conclusion thus follows.

14

In *McCuskey*, the Fourth Circuit applied similar reasoning to hold that the Supremacy Clause forbids enforcement of a West Virginia law that parallels the Act.[5] 2026 WL 898259 at *8–12. The Fourth Circuit reasoned that West Virginia's statute "targets *only* manufacturers that participate in the 340B program" and "imposes restrictions *only* on drug manufacturers when they *comply* with their end of the 340B bargain." *Id.* at *9. The Fourth Circuit held that Congress left no room for States to layer on additional requirements or to undermine the bargain it offered to manufacturers. *Id.* West Virginia, thus, impermissibly interfered in the "field [of] ... 340B program requirements." *Id.* The Fourth Circuit noted that "[i]f West Virginia hadn't specifically targeted 340B manufacturers for unfavorable treatment, the analysis would look different." *Id.* at *10 (citing *Dawson*, 586 U.S. at 179). But because West Virginia singled out those who do business with the federal government, it fell afoul of the Supremacy Clause. *See id.* Hawaii's enactment interferes with Congress's design for the 340B Program in another critical way. "Congress vested authority to oversee compliance with the 340B Program in HHS and assigned no auxiliary enforcement role

---

[5] The West Virginia law prohibited manufacturers from restricting the acquisition of 340B drugs by covered entities or restricting the delivery of 340B drugs to contract pharmacies. *McCuskey*, 2026 WL 898259 at *5 (citing W. Va. Code § 60A-8-6a(b)(1)).

15

to covered entities" or to States. *See Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 117 (2011). Instead, it "centralized enforcement in the [federal] government" to avoid "the risk of conflicting adjudications," *id.* at 119–20 (quotation marks omitted), "ma[king] HHS the 340B Program's sole enforcer," *McCuskey*, 2026 WL 898259 at *11. Congress chose this "unitary administrative and enforcement scheme" because it intended for HHS to "administer both Medicaid and § 340B harmoniously and on a uniform, nationwide basis," in recognition that "an adjudication of rights under one program must proceed with an eye towards any implications for the other." *Astra*, 563 U.S. at 120 (quotation marks omitted). In *Astra USA*, the Supreme Court recognized that "[f]ar from assisting HHS," resort to state law remedies to resolve 340B disputes "would undermine" Congress's intent to create a uniform system. *See id.*

This general principle about 340B enforcement is particularly applicable in this context. The Supreme Court decided *Astra* shortly after the enactment of the Affordable Care Act, in which Congress directed HHS to create a formal dispute resolution procedure, institute refund and civil monetary penalty systems, and perform audits of manufacturers, Pub. L. No. 111-148, 124 Stat. at 823–27. *See Astra USA*, 563 U.S. at 116 (recognizing that new dispute-resolution procedures were forthcoming). "HHS maintains the power to enforce *bona fide* offers to covered

entities." *McCuskey*, 2026 WL 898259 at *11 (citing *Novartis*, 102 F.4th at 462–63). And the dispute-resolution scheme expressly encompasses "claims that a manufacturer has limited the covered entity's ability to purchase covered outpatient drugs at or below the 340B ceiling price." 42 C.F.R. § 10.21(a)(1). The Act supplants that scheme by arrogating to the State enforcement authority that properly belongs to the federal government alone. *See* Haw. Rev. Stat. §§ 481n-3, 481n-4. In enacted findings, the Hawaii legislature acknowledged that "the purpose of this Act is to preserve the integrity of the 340B drug pricing program." Haw. Laws 2025, ch. 143, § 1. That act of self-aggrandizement conflicts with the scheme Congress designed. *See McCuskey*, 2026 WL 898259 at *11 ("States have no room to create new enforcement schemes in the same arena.").

**B. State laws like the Act risk disincentivizing Medicare and Medicaid participation.**

Participation in Medicaid, and with it, participation in the 340B Program, is voluntary. *See Boehringer Ingelheim Pharms., Inc. v. HHS*, 150 F.4th 76, 88 n.7 (2d Cir. 2025) (collecting cases). Manufacturers make a business decision to participate. As a result, the manufacturers, the federal government, and millions of patients end up

better off. *Cf. id.* at 92 n.11 (noting harmful effect of manufacturer's potential withdrawal from Medicare program).

If the costs of participating in these programs outstrip the benefits, however, rational manufacturers can be expected to withdraw from them. *See McCuskey*, 2026 WL 898259 at *10. Indeed, Bausch Health recently voluntarily withdrew from Medicaid and the 340B Program and attributed its decision to recent "legislative changes." *See* Bausch Health Cos., Quarterly Report (Form 10-Q), at 53 (Oct. 30, 2025). As a result, the dozens of drugs Bausch previously supplied to Medicaid patients—including important medications used to treat gastrointestinal and neurological diseases—are no longer available through Medicaid. *E.g.*, Me. Dep't of Health & Hum. Servs., *Discontinuation of Coverage: Xifaxan (Rifaximin)* (Sept. 18, 2025), https://perma.cc/44YG-FMNJ; *see* 42 U.S.C. § 1396r-8(a)(1). If the costs of participation continue to rise, other manufacturers might also withdraw.

The determination of what conditions to impose on 340B-participating manufacturers rests with Congress, not the States. *See McCuskey*, 2026 WL 898259 at *10. Only the federal government can determine the extent to which it will tolerate the risk of manufacturer withdrawal. For several reasons, this principle holds true regardless of whether Hawaii's regulations are significant enough to alter any manufacturer's cost-

18

benefit analysis. To start, there is no de minimis exception to the intergovernmental immunity doctrine. *See Dawson*, 586 U.S. at 176; *see also California*, 921 F.3d at 883–84. The Supremacy Clause permits no amount of discrimination against the federal government, for "[a] question of constitutional power can hardly be made to depend on a question of more or less," *McCulloch*, 17 U.S. (4 Wheat.) at 327. Moreover, if Hawaii can impose additional conditions on the 340B Program, so can the other States. *See Wisconsin Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*, 475 U.S. 282, 288 (1986). Indeed, other States are continuing to do so. *See* National Ass'n of Cmty. Health Ctrs., *A Year in Review: State Legislative Trends in 340B in 2025* (Oct. 17, 2025), https://perma.cc/8V7G-HMLX ("21 states have enacted these laws, with many passing in 2025.").

The 340B Program is not the only potentially costly obligation borne by pharmaceutical manufacturers who participate in Medicare and Medicaid. These same manufacturers, for example, are also obligated to participate in the Medicaid Rebate Program, *see* 42 U.S.C. § 1396r-8, and the Medicare Drug Price Negotiation Program, *id.* §§ 1320f–1320f-7. Because manufacturers consider these costs cumulatively when deciding whether to participate in Medicare and Medicaid, so must Congress. Patchwork state regulation, however, does not facilitate that kind of wide-angle study.

19

Congress properly determines what conditions should attach to 340B Program participation, and Hawaii is not free to supplement that scheme.

**II.     The district court erred in denying a preliminary injunction.**

1. The district court erred in concluding that the Act may coexist with Section 340B.

a. The district court fundamentally misunderstood the intergovernmental immunity doctrine. The district court reasoned that States may discriminate against those who do business with the federal government as long as "the federal government does not bear the financial burden of the state law in the first place." 1-ER-44; *see* 1-ER-40–44. Not so. The intergovernmental immunity doctrine prevents states from "regulat[ing] the United States directly *or* discriminat[ing] against the Federal Government or those with whom it deals" *Washington*, 596 U.S. at 838 (quoting *North Dakota*, 495 U.S. at 435 (plurality opinion)).  The "discrimination-related prohibition" itself has two branches. If a state law "imposes ... costs in a neutral, nondiscriminatory way," then it satisfies the Supremacy Clause even if it "indirectly increases costs for the Federal Government." *Id.* at 839. But if the state law targets the federal government or those with whom it does business "for less favorable treatment" or "regulates them unfavorably on some basis related to their governmental status," then it violates the

20

Supremacy Clause. *Id.* (quotation marks omitted); *see also King County*, 122 F.4th at 757. The Act is unconstitutional because it discriminates against 340B providers, regardless of whether it imposes indirect costs on the federal government. *See California*, 921 F.3d at 883 (there is no "de minims exception to the doctrine of intergovernmental immunity"); *see also United States v. City of Arcata*, 629 F.3d 986, 991–92 (9th Cir. 2010) ("A state or local law that directly regulates the conduct of the federal government or discriminates against it is invalid, even if it is no more restrictive than federal law."). The district court's conclusion to the contrary would allow States to undermine disfavored federal programs. In the district court's view, so long as the federal government "does not bear the financial burden," States may target participants in federal programs with any regulations. Take, for example, a federal program to subside low-income housing. Under the district court's theory, for any developer that accepted the federal subsidy, a State could double the property taxes for the site or double the parking requirements for the project. The federal government would not bear costs from those regulations; rather, by disincentivizing use of the subsidy, the state regulation would reduce the burden on the federal fisc. But this type of discriminatory treatment could significant impair the federal program. The Supremacy Clause does not permit states to obstruct federal activities through discriminatory regulations. *See*

21

*North Dakota*, 495 U.S. at 437–38 (plurality opinion) (citing *McCulloch*, 17 U.S. (4 Wheat.) at 425–37); *see also Boeing Co.*, 768 F.3d at 839.

b. The district court's preemption analysis is no more tenable. To start, the district court saw no "uniquely federal interest" at stake in the 340B Program, 1-ER-38, even though even though the federal interest in determining the costliness of Medicare and Medicaid participation could hardly be stronger, *see supra* pp. 17–20.

The district court believed that because Congress was silent about how manufacturers would deliver drugs to covered entities, it left room for the States to regulate. *See* 1-ER-31–36. Congressional silence ordinarily defeats preemption arguments. *See Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1143 (9th Cir. 2015). But that rule depends on context. *See, e.g.*, *Transcontinental Gas Pipe Line Corp. v. State Oil & Gas Bd.*, 474 U.S. 409, 422 (1986) (Congress's decision to limit federal agency's regulatory power "has little to do with whether state regulations … impermissibly intrude upon federal concerns"). In light of the reticulated scheme Congress created here, the context does not suggest that Congress left States free to layer on regulations. *See McCuskey*, 2026 WL 898259, at *9. And more pertinently, to authorize regulations that discriminate against the federal government or those with whom it does business, Congress must speak expressly. *See Washington*, 596 U.S. at

22

839–40; *see also Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 176 (1988).

Congressional silence therefore does not permit States to target participants in federal programs for additional regulation.

2. Other circuits have similarly erred in failing to hold similar state enactments preempted.[6] The Eighth Circuit rejected a preemption challenge to an Arkansas law[7] that operates similarly to the Act. *See Pharmaceutical Rsch. & Mfrs. of Am. v. McClain*, 95 F.4th 1136, 1146 (8th Cir. 2024). The Eighth Circuit concluded that Congress left room for States to regulate alongside the 340B Program because States traditionally regulate pharmacies. *See id.* at 1143–44. State laws targeting contract-pharmacy arrangements do not regulate the safety of prescription drugs or pharmacy operations or even state contracts. They operate only within the 340B Program. If two transactions for the same drugs occur between the same manufacturers, pharmacies, and providers but one prescription is dispensed to a 340B-eligible patient and the second prescription is not, the state law applies only to the first transaction. That sort of targeted regulation

---

[6] The United States did not file amicus briefs in these earlier cases, so the courts of appeals did not have the benefit of the federal government's views in reaching their decisions.

[7] The Arkansas law prohibited manufacturers from refusing to provide drugs to covered entities or their contract pharmacies at the 340B ceiling price. *McClain*, 95 F.4th at 1143 (citing Ark. Code Ann. § 23-92-604(c)).

of participation in a federal program does not survive constitutional scrutiny just because some other generally applicable exercise of the State's police power could be permissible. For example, Congress may require as a condition of receiving federal funds that universities provide the military with equal access to on-campus recruiting. 10 U.S.C. § 983(b); *see Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 60 (2006). A State also could require all universities subject to its jurisdiction to provide equal access to recruiters for state agencies. But a State could not condition a university's receipt of *federal* funds on its providing access to *state* recruiters. That, however, is just the sort of condition Hawaii seeks to impose here.

The Eighth Circuit also concluded that because the Arkansas law regulated the relationship between contract pharmacies and manufacturers rather than between covered entities and manufacturers, it did not conflict with federal law. *McClain*, 95 F.4th at 1144. But whether the condition applies to how the manufacturer deals with the covered entity or the contract pharmacy is similarly irrelevant. The relevant question is whether the State has targeted those who participate in a federal program for additional regulation.

24

The Fifth Circuit similarly erred in rejecting challenges to Mississippi and Louisiana statutes,[8] which parallel the Act. *See AbbVie, Inc. v. Fitch*, 152 F.4th 635 (5th Cir. 2025) (per curiam); *AbbVie, Inc. v. Murrill*, 166 F.4th 2026 (5th Cir. 2026), *petition for rehearing en banc filed* (Mar. 25, 2026). The Fifth Circuit adopted reasoning similar to that of the Eighth Circuit in *McClain*, which lacks merit for the same reasons. *See Fitch*, 152 F.4th at 646–48; *see also Murrill*, 166 F.4th at 539–42 (applying *Fitch*).

In *Murrill*, the Fifth Circuit rejected the argument that Louisiana's statute "skews the program's delicate balance of statutory objectives because Act 358 applies only to 340B participants." 166 F.4th at 542 (quotation marks omitted). That conclusion, however, rested entirely on statutory silence. *See id.* ("Congress decided not to undertake regulation of the delivery of 340B drugs or the role of pharmacies in that process—thereby leaving, absent congressional amendment, those matters to state law."). The Fifth Circuit failed to recognize that the States lack authority to

---

[8] The Mississippi law prohibited manufacturers from refusing to provide 340B drugs to covered entities through contract pharmacies at the 340B ceiling price. *Fitch*, 152 F.4th at 641 (citing Miss. H.B. 728 § 4(1)–(2) (2024)). The Louisiana law prohibited manufacturers from refusing to provide 340B drugs to contract pharmacies and from interfering with contract pharmacies. *Murrill*, 166 F.4th at 537 & n.17 (citing La. Stat. Ann. § 40:2884).

discriminate against those who do business with the federal government. And it summarily dismissed the costs that the state law imposes on manufacturers. Whether to impose such costs, however, is a choice for Congress, not the States.

\*\*\*

When Congress set out the terms of the 340B Program, it made a series of policy choices concerning how much of a burden to impose on manufacturers and what benefits to offer covered entities. It further directed HHS to create a dispute resolution mechanism to resolve whether manufacturers are shirking their 340B obligations. But Congress did not invite the States to discriminate against manufacturers on the basis of their 340B participation or to supplant the enforcement mechanism that Congress authorized. Because the Act does so, it violates the Supremacy Clause.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

*Of Counsel:*

ELIZABETH C. KELLEY
*Deputy General Counsel*
*U.S. Department of Health and*
*Human Services*

YAAKOV M. ROTH
*Principal Deputy Assistant*
*Attorney General*

MICHAEL S. RAAB

*/s/ Maxwell A. Baldi*

MAXWELL A. BALDI
*Attorneys, Appellate Staff*
*Civil Division, Room 7513*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 532-0211*
*maxwell.baldi@usdoj.gov*

APRIL 2026

27

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(5) because it contains 5,614 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Word for Microsoft 365 in EB Garamond 14-point font, a proportionally spaced typeface.

*/s/ Maxwell A. Baldi*
MAXWELL A. BALDI